## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN KUTZER )
)
  Plaintiff, )
)
  v. )  (   CASE NUMBER 1:06CV01925
)
               JUDGE: Gladys Kessler
CARRAMERICA REALTY )
CORPORATION, )     DECK TYPE: Contract
)
  Defendant. )     DATE STAMP: 11/9/2006
)

### NOTICE OF REMOVAL

  CarrAmerica Realty Corporation no longer exists. CarrAmerica Realty Corporation was merged into Nantucket Acquisition Inc., pursuant to the "Agreement and Plan of Merger" dated March 5, 2006. Nantucket Acquisition Inc., was then liquidated, and Nantucket Parent LLC became the successor to Nantucket Acquisition Inc., pursuant to the "Assignment and Assumption Agreement," dated July 13, 2006. Nantucket Parent LLC is organized under the laws of the State of Delaware and has its principal place of business in the State of New York. Nantucket Parent LLC by counsel, hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446. In support of this Notice, Nantucket Parent LLC states as follows:

  1.  On or about October 4, 2006, Plaintiff Stephen Kutzer filed Stephen Kutzer v. CarrAmerica Realty Corporation, C.A. No. 0007467-06, in the Superior Court of the District of Columbia ("Superior Court Case").

  2.  Nantucket Parent LLC received a copy of the Summons and Complaint in the Superior Court Case on October 12, 2006. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Complaint is attached hereto as Exhibit A. No other documents have been served or filed in the Superior Court Case.

3.    Removal from the Superior Court to this Court is proper based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 1441(b) because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs), the action is between citizens of different states and Nantucket Parent LLC is not a resident of the District of Columbia:

(a)    Plaintiff is seeking $189,656.50 in compensatory damages. See Ex. A, Complaint, at pp. 11, ¶ 1.

(b)    Plaintiff indicated that he is a citizen of the Commonwealth of Virginia. See Ex. A, Caption to the Compliant.

(c)    Nantucket Parent LLC is a limited liability corporation.  It is organized under the laws of the state of Delaware and its principal place of business is the state of New York.

4.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) as it is being filed within thirty days after Nantucket Parent LLC's receipt of service of the Complaint and Summons.

5.    Written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the clerk of the Superior Court, as provided by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Nantucket Parent LLC respectfully requests that the above action now pending against it in the Superior Court of the District of Columbia be removed therefrom to this Court.

Dated: November 9, 2006

Respectfully submitted,

Sally D. Garr, D.C. Bar No. 337246
Patton Boggs LLP
2550 M Street, NW
Washington, DC  20037
(202) 457-6000 (phone)
(202) 457-6482 (fax)

Counsel for Defendant

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2006, a true copy of the foregoing Notice of

Removal was served by first-class mail, postage prepaid, upon:

> Lynne Bernabei
> The Bernabei Law Firm, PLLC
> 1775 T Street, N.W.
> Washington, D.C. 20009-7139
> (202) 745-1942

Sally D. Garr

06-1925
GK

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Stephen Kutzer | CarrAmerica Realty Corporation |

26888    11001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Stafford, VA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    New York
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAN~

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Lynne Bernabei
The Bernabei Law Firm, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

CASE NUMBER: 1:06CV01925

JUDGE: Gladys Kessler

DECK TYPE: Contract

DATE STAMP: 11/__/2006

**JURY ACTION**

| II. BASIS OF JURISDICTION | III CITIZENSHIP |
|---|---|
| (PLACE AN x IN ONE BOX ONLY) | FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY! |

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
⦿ 4 Diversity (Indicate Citizenship of Parties in item III)

III CITIZENSHIP FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⦿ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ⦿ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

- 0 -

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment**<br>**(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions**<br>**(if Privacy Act)**<br><br>**\*(If pro se, select this deck)\*** | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☒ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

○ 1 Original Proceeding    ⊙ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Common law breach of contract. Plaintiff claims defendant failed to pay him severance benefits pursuant to defendant's severance pay plan.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** 189,656.50    Check YES only if demanded in complaint
**JURY DEMAND:**    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 11/09/06    SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

Stephen B. Kutzer
313 Ingleside Drive Falmouth, VA 22405

*Plaintiff*

0007467-06

vs.

CarrAmerica Realty Corporation
1850 K Street N.W. Suite 500, Washington, D.C. 20006

*Defendant*

Civil Action No. [          ]

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Lynne Bernabei, Esquire
Name of Plaintiff's Attorney

The Bernabei Law Firm, PLLC
Address

1775 T St., N.W., Washington D.C. 20009

202-745-1942
Telephone

By _____
Deputy Clerk

Date October 4, 2006    OCT 0 4 2006

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 96    **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

## IN THE SUPERIOR COURT
## FOR THE DISTRICT OF COLUMBIA

Stephen B. Kutzer,                    )
313 Ingleside Drive                   )
Falmouth, VA 22405                    )
                                      )
              Plaintiff,              )
                                      )
          v.                          )
                                      )
CarrAmerica Realty Corp.,             )
1850 K Street, N.W.                   )
Suite 500                             )
Washington, D.C.  20006               )
                                      )        Civil Action No. _____ 0007467-06
   Serve:                             )
                                      )
   CT Corporation System             )
   1015 15th Street, N.W.             )
   Suite 1000                         )
   Washington, D.C.  20005            )
                                      )
              Defendant.              )
                                      )



RECEIVED
Civil Clerk's Office
OCT 0 4 2006
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT FOR
## INJUNCTIVE AND MONETARY RELIEF AND JURY DEMAND

### Preliminary Statement

1.    This is an action by plaintiff Stephen B. Kutzer against his former employer,

defendant CarrAmerica Realty Corp. ("CarrAmerica" or "the Company") for breach of contract

and breach of the implied covenant of good faith and fair dealing based on defendant's refusal to

comply with its contractual obligation to pay severance benefits to plaintiff.

### Parties

2.    Plaintiff Stephen B. Kutzer is a citizen of the United States.  Defendant

CarrAmerica hired Mr. Kutzer in January 2002 to serve as Vice President of Information

Technology in its Washington D.C. office.  On or about March 2006, Mr. Kutzer entered into a

contract, governed by the laws of the District of Columbia, with CarrAmerica setting forth the

severance pay he would receive if certain conditions of his job were changed.  At all relevant

times, Mr. Kutzer was employed in the Washington, D.C. office of CarrAmerica.

3.    Defendant CarrAmerica is a real estate investment trust (REIT) engaged in the

acquisition, development, and operation of commercial properties, with its principal offices

located at 1850 K Street N.W. Suite 500, Washington, D.C.  20006.  The Company was

incorporated under the laws of the State of Maryland.  At all times relevant to this complaint, the

Company was doing and transacting business in the District of Columbia.  In March 2006, the

Board of Directors of CarrAmerica adopted and approved a Change in Control Severance Pay

Plan which affected all its employees and which is governed by the laws of the District of

Columbia.

### Jurisdiction and Venue

4.    This court has jurisdiction over this matter pursuant to D.C. Code Ann. § 11-

921(a)(6) (2001 ed.).

5.    This court has personal jurisdiction over defendant CarrAmerica pursuant to D.C.

Code Ann. § 13-422 (2001 ed.).  Venue is appropriate in the District of Columbia because the

events or omissions giving rise to Mr. Kutzer's claims occurred in the District of Columbia.

### Factual Allegations

6.    Mr. Kutzer graduated with a B.A. degree in Business Administration from George

Washington University in 1981, and graduated with a M.S. degree in Information Systems

Technology from George Washington University in 1987.

7.      Mr. Kutzer has over two decades of experience in managing large, complex and diverse information technology systems. Prior to joining CarrAmerica, Mr. Kutzer worked as a senior manager at a major consulting firm.

8.      In January 2002, CarrAmerica hired Mr. Kutzer to serve as Vice President of IT Operations. Mr. Kutzer joined CarrAmerica because of the opportunity to work in an executive position with increased leadership responsibilities than those he previously had.

9.      Since January 2002, CarrAmerica has benefited from Mr. Kutzer's experience, dedication and loyalty. Mr. Kutzer was the lead technical architect and designer for CarrAmerica's information systems.

10.     Recognizing his successes and significant contributions, the Company promoted Mr. Kutzer to Senior Vice President in July 2004.

11.     On March 5, 2006, the Board of Directors of CarrAmerica adopted and approved the CarrAmerica Realty Corporation Change in Control Severance Pay Plan ("The Severance Pay Plan"). Attached and incorporated as Exhibit 1. The Severance Pay Plan's stated purpose is "to encourage the continued employment with and dedication to the Company of certain of the Company's and its Affiliate's officers and employees in the face of potentially distracting circumstances arising from the possibility of a change in control of the Company . . ."

12.     The Severance Pay Plan, effective from March 5, 2006 through September 30, 2008, provides for severance benefits following a change in control if:

(1)      the Company terminates an employee's employment other than for Cause, or;

(2)      the employee terminates employment for Good Reason during the Change in Control Period.

3

The Severance Pay Plan provides that "Good Reason" includes, "that the Employee has his responsibilities or areas of supervision with the Company substantially reduced."

13.    On March 6, 2006, CarrAmerica announced that it had been acquired by The Blackstone Group ("Blackstone") and that the change in control would take effect after the approval by shareholder vote.

14.    Soon after the announcement of an impending change in control, Mr. Kutzer met David Coler, a senior IT advisor for Blackstone. Mr. Coler made it clear that he wanted to see major downsizing in CarrAmerica's IT department, which necessarily would lead to a substantial reduction in Mr. Kutzer's responsibilities.

15.    On or about March 20, 2006, Mr. Coler told Mr. Kutzer that IT organizations are "barnacles that need to be scraped." Upon information and belief, the "barnacles" reference was repeated at the May 8 through May 11 Directors of Operations retreat, to which Blackstone managers responded that, "Blackstone is not in the IT business," and "We don't care about IT."

16.    On April 11, 2006, Kurt Heister, CarrAmerica's then Senior Vice President and Controller, told Mr. Kutzer that he wanted Mr. Kutzer to lead IT moving forward, and that Bill Simpson, CarrAmerica's current Chief Information Officer, would work on a transition basis for a few months before being severed. Based on this promise that he would retain the same responsibilities as he has previously had, Mr. Kutzer agreed to continue his employment with the Company.

17.    Upon information and belief, Mr. Coler opposed Mr. Kutzer having this type of a leadership role in the Company. Upon information and belief, on April 19, 2006, after a full day, closed-door meeting with Mr. Simpson, Mr. Coler decided that there would be drastic cuts in IT,

4

ultimately reducing the staff to no more than five people.

18.     On May 18, 2006, Mr. Heister acknowledged to Mr. Kutzer and Mr. Simpson, that although he had said that Mr. Kutzer would lead IT because "he is more hands-on," that "Dave Coler hates you [Kutzer] and is adamant that Simpson be the head of IT." He then asked both Mr. Kutzer and Mr. Simpson to tell him if one of them was not interested in heading IT because it would make his decision easier. At that time, Mr. Kutzer and Mr. Simpson both indicated interest in the job.

19.     On May 25, 2006, Marshall Findley, Blackstone's Managing Director told Mr. Kutzer that Mr. Coler "refuses to be a part of this deal," if Mr. Kutzer heads up IT. Mr. Findley stated that he did not know how he was going to handle the situation, but told Mr. Kutzer, "be assured we will do this humanely." Mr. Findley also told Mr. Kutzer that Mr. Coler holds great authority within Blackstone and that Mr. Coler's opinion is greatly respected due to his successes on the hotel projects for Blackstone.

20.     In June 2006, Mr. Heister told Mr. Kutzer that he planned to keep him and Mr. Simpson in an undefined co-leadership role, and "see where we're at in 9 to 12 months." He suggested that maybe in a year the job would become too small for two people.

21.     Mr. Kutzer became increasingly anxious about his status within the Company, as Mr. Coler had extensive responsibility over the merger, and he had expressed severe hostility towards Mr. Kutzer.

22.     On June 27, 2006, Mr. Kutzer asked Mr. Heister to clarify what his job title and duties would be going forward. Mr. Heister told Mr. Kutzer that he needed time to discuss the issue with Mr. Coler and Mr. Findley, and could make no assurances at that time.

23.    About a week later, on July 5, 2006, Mr. Heister told Mr. Kutzer specifically that Mr. Coler was continuing to "insist that [Mr. Kutzer] not be part of the deal," and that he is tired of fighting this battle with Mr. Coler. Mr. Heister also told Mr. Kutzer that he could not offer him the kind of job he could get elsewhere, and suggested that he leave and find a new job.

24.    Blackstone's acquisition of CarrAmerica was fully executed on July 13, 2006. On July 18, 2006, CarrAmerica issued a press release naming its executive management team. The release named Bill Simpson as Chief Information Officer, and did not identify Mr. Kutzer as a member of the executive management team.

25.    Immediately following the execution of the merger, CarrAmerica substantially reduced Mr. Kutzer's responsibilities. The Company reduced his budget responsibility by approximately $3 million, and eliminated from his job projects which accounted for up to 80 percent of his capitalized time (budgeting and forecasting replacement, HR systems, employee training systems) from his job, as well as many of the systems that he previously supported. CarrAmerica began laying off the staff who reported to him. The Company placed three of Mr. Kutzer's staff members on a "retention program." Mr. Satya Bhatia and Ms. Kendra Carroll were asked to stay with the Company until October 31, 2006, at which point the Company would sever them. Ms. Silvia Lighthouse was asked to stay with the company until December 31, 2006 at which point the Company would sever her. The Company also reduced, through mass layoffs, the users who Mr. Kutzer supported from 650 users to about 500.

26.    In mid-July 2006, the Company announced the sale of its Washington D.C. portfolio, which would further reduce the users of the IT systems to fewer than 300 as well as reducing the property portfolio Mr. Kutzer supported by approximately one third.

6

27.    In addition, the new management of CarrAmerica systematically excluded Mr. Kutzer from management meetings and management decisions. Mr. Heister discussed management issues with Mr. Kutzer's direct reports rather than with him. For example, Mr. Heister discussed with Porter Bellew, one of Mr. Kutzer's direct reports, the staff he should retain, and the staff's "management promote" (i.e. profit sharing). Mr. Coler and Mr. Findley excluded Mr. Kutzer from senior management discussions.

28.    The Company refused to define Mr. Kutzer's role or responsibilities after the merger. The new management of CarrAmerica did not offer him a position, and did not give him information about his title and compensation moving forward. The Company also refused to sever him, but instead kept him in this undefined job with fewer responsibilities.

29.    On August 7, 2006, Mr. Kutzer, through counsel notified the Company that he had contractual claims against the Company arising from the Company's failure to pay him the severance benefits he was due under the Severance Pay Plan, after constructively discharging him. Mr. Kutzer also notified the Company that its actions had given him good cause to terminate his employment, which would obligate the Company to pay his severance benefits under the Severance Pay Plan.

30.    The Company, through counsel, in a letter dated August 10, 2006, notified Mr. Kutzer that it did not intend to pay him any severance benefits.

31.    By severely diminishing Mr. Kutzer's responsibilities, marginalizing him on the job, and refusing to define his role and responsibilities, the Company forced Mr. Kutzer out of his job.

32.    Mr. Kutzer was forced to resign from CarrAmerica. In his resignation letter, dated

7

August 13, 2006, Mr. Kutzer requested payment of the severance benefits that CarrAmerica owed him under its Severance Pay Plan, as both requirements that mandated he be provided severance pay had been met:

(1)    The Company had constructively discharged him; and

(2)    Mr. Kutzer had terminated his employment because of the Company's substantial reduction of his responsibilities which constituted good reason for termination.

33.    In a letter dated August 30, 2006, Mr. Heister informed Mr. Kutzer that the Company would not pay him the severance that he was due under the Severance Pay Plan.

## COUNT I – BREACH OF CONTRACT AGAINST DEFENDANT CARRAMERICA.

34.    Plaintiff incorporates as though restated each of the allegations set forth in paragraphs 1 through 33 above.

35.    Under defendant's Severance Pay Plan, which was a part of plaintiff's employment contract with defendant CarrAmerica, the defendant promised to pay severance benefits following a change in control if the defendant terminates an employee's employment other than for Cause, or if the employee terminates employment for Good Reason during the Change in Control Period. The Severance Pay Plan defines "Good Reason" to include, "that the Employee has his responsibilities or areas of supervision with the Company substantially reduced."

36.    After the announcement, on March 6, 2006, that there would be a change in control of defendant CarrAmerica, plaintiff remained employed with the defendant based on the assurance that he would lead the IT department. Plaintiff fully performed all his obligations under his employment contract, including all obligations set forth in the Severance Pay Plan, in

8

an exemplary manner.

37.     After execution of the merger on July 13, 2006, defendant took away most of plaintiff's duties and excluded him from participating in projects in which he had substantially participated prior to the merger.  The Company canceled the projects that accounted for the vast majority of his work portfolio, eliminated or was on its way to eliminating the systems he supported, slashed the number of users he supported, and was projected to cut one third of the staff directly reporting to him by the end of the year.

38.     Defendant CarrAmerica breached its contract with plaintiff when it failed and refused to pay the severance benefits after plaintiff was constructively discharged because of defendant's actions (i.e., defendant took away most of his duties, excluded him from management meetings and decisions, and barred him from opportunities for advancement), and was forced to resign.

39.     Defendant CarrAmerica also breached its contract with plaintiff when it failed and refused to pay the severance benefits after plaintiff resigned for good reason after defendant substantially reduced his responsibilities and areas of supervision.

40.     Under defendant CarrAmerica's Severance Pay Plan, defendant owed plaintiff, within ten (10) days of the date of termination of employment, as a result of his resignation for good cause or as a result of constructive discharge, a severance package which includes lump sum payment of six months salary and bonus plus payment of accrued bonus for 2006 up to the date of severance.

41.     Defendant CarrAmerica has repudiated its contractual obligations to plaintiff, has acted in bad faith, and has not dealt fairly with plaintiff.

9

42. Defendant CarrAmerica is liable to plaintiff for its breach of contract, in the amount of $189,656.50, plus interest thereon.

43. Defendant is also liable, by the terms of its contract with Plaintiff, for legal fees and costs in enforcing his rights under the Severance Payment Plan.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT CARRAMERICA.

44. Plaintiff incorporates as though restated each of the allegations set forth in paragraphs 1 through 43, above.

45. Defendant's Severance Pay Plan, which was a part of plaintiff's employment contract with defendant CarrAmerica and which plaintiff accepted, promised plaintiff that he would be entitled to severance benefits following a change in control if the defendant terminated his employment other than for Cause, or if he himself terminated his employment for Good Reason during the Change in Control Period.

46. After the execution of a change in control of CarrAmerica, the defendant Company constructively discharged plaintiff by taking away most of his duties, excluding him from management meetings and decisions, and barring him from opportunities for advancement within the new Company. The Company, however, refused to sever him and fulfill its contractual obligation to pay him the benefits he is due under the Severance Pay Plan.

47. On August 13, 2006, plaintiff resigned for good cause after defendant substantially reduced plaintiff's responsibilities and areas of supervision. Since his resignation, defendant has refused to pay plaintiff the severance benefits he is due under the Severance Pay Plan.

10

48.    Defendant CarrAmerica breached its implied duty of good faith and fair dealing with plaintiff, by destroying or injuring the right of the plaintiff to receive the fruits of the contract. Defendant CarrAmerica has evaded the spirit of the contract and willfully breached its contractual duty thereby rendering defendant CarrAmerica liable for breach of the implied covenant of good faith and fair dealing.

49.    Defendant's actions were taken in bad faith, are intentional, and have caused plaintiff economic damages.

50.    Defendant's actions were aggravated by egregious conduct and an evil or reckless state of mind.

51.    Defendant CarrAmerica is liable to plaintiff for its breaches of the implied contract of good faith and fair dealing, the exact amount to be proven at trial, plus interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court grant him the following relief:

1.    Enter a judgment in plaintiff's favor and against defendant CarrAmerica in the amount of $189,656.50 for breach of contract based on defendant's refusal to pay plaintiff severance benefits, plus pre- and post-judgment interest;

2.    Enter a judgment in plaintiff's favor and against defendant CarrAmerica for breach of implied covenant of good faith and fair dealing, based on defendant's refusal to pay plaintiff severance benefits, plus pre- and post-judgment interest;

11

3.  An award to plaintiff of reasonable attorneys' fees and costs; and

4.  All other relief the court deems just and equitable.


Respectfully submitted,



Lynne Bernabei         D.C. Bar No. 938936
Bernabei@BernabeiPLLC.com
THE BERNABEI LAW FIRM, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942



David Wachtel          D.C. Bar No. 427890
Wachtel@BernabeiPLLC.com
THE BERNABEI LAW FIRM, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942


Counsel for Plaintiff Stephen B. Kutzer

DATED:  October 4, 2006

12

**IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Stephen B. Kutzer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. |
| | ) |
| CarrAmerica Realty Corp. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Lynne Bernabei        D.C. Bar No.  938936
Bernabei@BernabeiPLLC.com
THE BERNABEI LAW FIRM, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

David Wachtel        D.C. Bar No. 427890
Wachtel@BernabeiPLLC.com
THE BERNABEI LAW FIRM, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Counsel for Plaintiff Stephen B. Kutzer

DATED:  October 4, 2006

# EXHIBIT 1

# CARRAMERICA REALTY CORPORATION
## CHANGE IN CONTROL
## SEVERANCE PAY PLAN

CarrAmerica Realty Corporation (the "Company"), sets forth herein the terms of its Change in Control Severance Pay Plan (the "Plan") as follows:

### SECTION 1.     PURPOSE.

The Board of Directors of the Company (the "Board") believes that it is in the best interests of the Company to encourage the continued employment with and dedication to the Company of certain of the Company's and its Affiliate's officers and employees in the face of potentially distracting circumstances arising from the possibility of a change in control of the Company, and the Board has established the Plan for this purpose.

### SECTION 2.     DEFINITIONS.

(a)     "Accrued Obligations" means, with respect to an Employee, the sum of (1) the Employee's Annual Base Salary through the Date of Termination to the extent not theretofore paid, (2) the product of (x) the Employee's Annual Bonus and (y) a fraction, the numerator of which is the number of days in the current fiscal year through the Date of Termination, and the denominator of which is 365, and (3) any compensation previously deferred by the Employee (together with any accrued interest or earnings thereon) and any accrued vacation pay, in each case, to the extent not theretofore paid.

(b)     "Affiliate" means, with respect to the Company, any company or other trade or business that controls, is controlled by or is under common control with the Company within the meaning of Rule 405 of Regulation C under the Securities Act of 1933, as now in effect or as hereafter amended, including, without limitation, any subsidiary.

(c)     "Annual Base Salary" means, with respect to an Employee, the greater of (a) the annual base salary payable to the Employee by the Company and its Affiliates as of the Date of Termination or (b) the amount equal to twelve times the highest monthly base salary paid or payable, including any base salary which has been earned but deferred, to the Employee by the Company and its Affiliate in respect of the twelve-month period immediately preceding the month in which the Date of Termination occurs.

(d)     "Annual Bonus" means, with respect to an Employee, the amount that would be paid to the Employee as bonus payments if the Employee achieved all performance targets for the year.

\\\DC - 62780/0106 - 2249348 v6

EXHIBIT 1

(e)    "Board" means the Board of Directors of the Company.

(f)    "CarrAmerica Service Provider" means any employee or independent contractor of the Company or any of its Affiliates.

(g)    "Cause" for termination of an Employee's employment by the Company shall be deemed to exist if: (a) the Employee is found guilty by a court of having committed fraud or theft against the Company and such conviction is affirmed on appeal or the time for appeal has expired; (b) the Employee is found guilty by a court of having committed a crime involving moral turpitude and such conviction is affirmed on appeal or the time for appeal has expired; (c) in the reasonable judgment of the Board, the Employee has compromised trade secrets or other similarly valuable proprietary information of the Company; or (d) in the reasonable judgment of the Board, the Employee has engaged in gross or willful misconduct that causes substantial and material harm to the business and operations of the Company or any of its Affiliates, the continuation of which will continue to substantially and materially harm the business and operations of the Company or any of its Affiliates in the future.

(h)    "Change in Control" means any of the following to occur, provided that only the first such event to occur shall be a Change in Control for purposes of this Plan:

(1)    The acquisition by any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) (a "Person") of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of more than 50% of either (i) the then outstanding shares of common stock of the Company (the "Outstanding Company Common Stock") or (ii) the combined voting power of the then outstanding voting securities of the Company entitled to vote generally in the election of directors (the "Outstanding Company Voting Securities"); provided, however, that for purposes of this subsection (h), the following acquisitions shall not constitute a Change in Control: (i) any acquisition by the Company; (ii) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; and (iii) any acquisition by any entity pursuant to a transaction which complies with clauses (i), (ii) and (iii) of subsection (3) of this Section 2(h); or

(2)    Individuals who, as of the date hereof, constitute the Board (the "Incumbent Board") cease for any reason to constitute at least a majority of the Board; provided, however, that any individual becoming a director subsequent to the date hereof whose election, or nomination for election by the Company's shareholders, was approved by a vote of at least a majority of the

directors then comprising the Incumbent Board shall be considered as though such individual were a member of the Incumbent Board, but excluding, for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board; or

(3)     Consummation of a reorganization, merger or consolidation or sale or other disposition of all or substantially all of the assets of the Company (a "Business Combination"), in each case unless, following such Business Combination, (i) all or substantially all of the individuals and entities who were the beneficial owners, respectively, of the Outstanding Company Common Stock and Outstanding Company Voting Securities immediately prior to such Business Combination beneficially own, directly or indirectly, more than 50% of, respectively, the then outstanding shares of common stock and the combined voting power of the then outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the entity resulting from such Business Combination (including, without limitation, a corporation which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination of the Outstanding Company Common Stock and Outstanding Company Voting Securities, as the case may be, and (ii) no Person (excluding any corporation resulting from such Business Combination or any employee benefit plan (or related trust) of the Company or such corporation resulting from such Business Combination) beneficially owns, directly or indirectly, 35% or more of, respectively, the then outstanding shares of common stock of the corporation resulting from such Business Combination or the combined voting power of the then outstanding voting securities of such corporation except to the extent that such ownership existed prior to the Business Combination and (iii) at least a majority of the members of the board of directors of the corporation resulting from such Business Combination were members of the Incumbent Board at the time of the execution of the initial agreement, or of the action of the Board, providing for such Business Combination; or

(4)     Approval by the shareholders of the Company of a complete liquidation or dissolution of the Company.

(i)     "Change in Control Date" means, with respect to a Change in Control Event, the date of consummation of the Change in Control relating to such Change in Control Event.

\\\DC · 62700/0108 · 2249348 v8

(j)    "Change in Control Event" means the earlier to occur of (i) a Change in Control or (ii) the execution and delivery by the Company of an agreement providing for a Change in Control.

(k)    "Change in Control Period" means the period commencing upon a Change in Control Event and ending two years after the Change in Control Date.

(l)    "Company" means CarrAmerica Realty Corporation or, from and after a Change in Control of the Company, the successor to the Company in any such Change in Control.

(m)    "Comparable Position" means a job of similar duties as with the Company, and such pay and benefits at a level that would not give rise to Good Reason under this Plan.

(n)    "Date of Termination" means, with respect to an Employee, the effective date of termination of the Employee's employment with the Company or any of its Affiliates.

(o)    "Employee" means an employee of the Company or an Affiliate of the Company, who was an employee of CarrAmerica Realty Corporation or its Affiliate immediately prior to the Change in Control Event and who is not a party to an individual change in control agreement that provides for the same or better benefits than are provided by this Plan.  In addition, any person who would be treated as an Employee, and is eligible for retention/severance payments in connection with the disposition of portfolio properties (hereafter, "retention payments"), shall not be treated as an Employee and thus shall not be covered by this Plan in connection with such a portfolio asset sale, unless he or she waives such retention payments.

(p)    "Good Reason" means, with respect to an Employee: (i) any reduction in the Employee's base salary, (ii) any reduction in the Employee's incentive compensation (including the value of any equity based incentive), (iii) any reduction in the aggregate employee benefits provided to such Employee, (iv) that the Employee has his responsibilities or areas of supervision with the Company substantially reduced, or (v) that the Employee is required to move his employment location to a location 35 miles or more from his job-site immediately prior to the Effective Date.

(q)    "Other Benefits" means, with respect to an Employee, any other amounts or benefits required to be paid or provided or which the Employee is eligible to receive under any plan, program, policy or practice or contract or agreement of the Company and its Affiliates.

4

(r)   "Severance Period" means the number of months equivalent to the period on which the severance benefits payable pursuant to Section 4(a)(i)(B) are determined.

## SECTION 3.   TERM.

This Plan shall be effective for a period commencing on March 5, 2006 and ending on September 30, 2008; provided, however, that, in the event of a Change in Control Event during the term of this Plan, the term of this Plan shall be automatically extended, if necessary, so that this Plan remains in full force and effect for the Change in Control Period relating to such Change in Control Event and until all payments required to be made hereunder have been made. References herein to the term of this Plan shall include the initial term and any additional period for which this Plan is extended or renewed.

## SECTION 4.   SEVERANCE BENEFITS FOLLOWING A CHANGE IN CONTROL.

(a)   Good Reason; Other Than for Cause.  If a Change in Control Event occurs during the term of this Plan and the Company terminates an Employee's employment other than for Cause or the Employee terminates employment for Good Reason during the Change in Control Period:

(i)   The Company shall pay to the Employee the following amounts:

A.   the Accrued Obligations in a lump sum in cash within 10 days of the Date of Termination;

B.   the severance benefits provided in Schedules A, B or C, as applicable; provided further, that the Employee has executed a Waiver and Release substantially in the form set forth in Schedule D, and the revocation period for such Waiver and Release has passed.

The Company shall pay the amounts provided in subparagraph (B) in a lump sum in cash within 10 days of the Employee's Date of Termination; provided further, that the Company shall provide the Employee with notice of employment termination and with a copy of the Waiver and Release sufficiently in advance of the Date of Termination to satisfy the 21 or 45 day consideration period, as applicable, under the Waiver and Release. All severance benefits provided to an Employee pursuant to subparagraph (B) of this Section 4(a)(i) shall be reduced and/or offset by any notice, payments or benefits to which the Employee may be entitled under the federal Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101 et seq., as amended, and any applicable state plant or facility closing or mass layoff law.

5

The mere occurrence of a Change in Control shall not be treated as a termination of an Employee's employment under this Plan, nor shall the mere transfer of an Employee's employment to an Affiliate of the Company be treated as a termination under this Plan. Further, an Employee shall not be eligible for any severance benefits provided in subparagraph (B) of this Section 4(a)(i) if, after the Change in Control, the Employee is terminated as a result of an acquisition, sale, spin-off, outsourcing or other business transaction of the Company or its Affiliate in connection with which (1) the successor party agrees for the remaining duration of the Change in Control Period, and agrees to cause its applicable affiliate, to provide severance benefits at least equal to those provided under this Plan, and (2) the Employee either is offered continued employment with the successor party or its affiliate in a Comparable Position to the one held by the Employee immediately prior to his or her Date of Termination or declines an interview for such a Comparable Position.

Anything in this Plan to the contrary notwithstanding, if, as a result of termination of an Employee's employment with the Company, the Employee would receive any payment that, absent the application of this paragraph of Section 4(a)(i), would be subject to interest and additional tax imposed pursuant to Section 409A(a) of the Code as a result of the application of Section 409A(2)(B)(i) of the Code, then no such payment shall be payable prior to the date that is the earliest of (1) 6 months after the Employee's Date of Termination, (2) the Employee's death or (3) such other date as will cause such payment not to be subject to such interest and additional tax.

(ii)     For the Severance Period after the Date of Termination, or such longer period as may be provided by the terms of the appropriate plan, program, practice or policy, the Company shall continue benefits to the Employee and/or the Employee's family at least equal to those which would have been provided to them in accordance with the welfare benefit plans, practices, policies and programs provided by the Company and its Affiliates for medical, prescription, and dental benefits to the extent applicable generally to other peer employees of the Company and its Affiliates, as if the Employee's employment had not been terminated and with the same the level of monthly Employee contribution as applicable prior to termination of employment; provided, however, that if the Employee becomes reemployed with another employer and is eligible to receive medical or other welfare benefits under another employer provided plan, the medical and other welfare benefits described herein shall be secondary to those provided under such other plan during such applicable period of eligibility.

(iii)     To the extent not theretofore paid or provided, the Company shall timely pay or provide to the Employee all Other Benefits.

\\\DC · 62700/0106 · 2245348 v3

(b)    Cause; Other Than for Good Reason.  If the Employee's employment is terminated for Cause during the Change in Control Period, this Plan shall terminate without further obligations to the Employee, other than the obligation to pay to the Employee (x) his Annual Base Salary through the Date of Termination, (y) the amount of any compensation previously deferred by the Employee and (z) Other Benefits through the Date of Termination, in each case to the extent theretofore unpaid. If the Employee voluntarily terminates employment during the Change in Control Period, excluding a termination for Good Reason, this Plan shall terminate without further obligations to the Employee, other than for Accrued Obligations and the timely payment or provision of Other Benefits through the Date of Termination. In such case, all Accrued Obligations shall be paid to the Employee in a lump sum in cash within 30 days of the Date of Termination.

SECTION 5.    EFFECT ON EQUITY COMPENSATION.

Immediately prior to a Change in Control, all equity compensation grants made to an Employee by the Company that are outstanding at the time of such Change in Control shall be accelerated and shall fully vest.  This Plan is intended to amend all equity compensation grants previously awarded to Employees to accelerate vesting as described above to the extent vesting would not otherwise be accelerated under the terms of such equity compensation grants.

SECTION 6.    CONFIDENTIALITY.

An Employee shall hold in a fiduciary capacity for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its Affiliates, and their respective businesses, which shall have been obtained by the Employee during the Employee's employment by the Company or any of its Affiliates and which shall not be or become public knowledge (other than by acts by the Employee or representatives of the Employee in violation of this Plan).  After the Employee's Date of Termination, the Employee shall not, without the prior written consent of the Company or as may otherwise be required by law or legal process, communicate or divulge any such information, knowledge or data to anyone other than the Company and those designated by it.

SECTION 7.    EXPENSES.

The Company shall pay any and all reasonable legal fees and expenses incurred by an Employee in seeking to obtain or enforce, by bringing an action against the Company, any right or benefit provided in this Plan if the Employee is successful in whole or in part in such action.

SECTION 8.    WITHHOLDING.

Notwithstanding anything in this Plan to the contrary, all payments required to be made by the Company hereunder to an Employee or his estate or

7

\\\DC · 62700/0106 · 2249343 v3

beneficiaries shall be subject to the withholding of such amounts relating to taxes as the Company reasonably may determine it should withhold pursuant to any applicable law or regulation. In lieu of withholding such amounts, in whole or in part, the Company may, in its sole discretion, accept other provisions for the payment of taxes and any withholdings as required by law, provided that the Company is satisfied that all requirements of law affecting its responsibilities to withhold compensation have been satisfied.

SECTION 9.    NO DUTY TO MITIGATE.

An Employee's payments received hereunder shall be considered severance pay in consideration of past service, and pay in consideration of continued service from the date hereof and entitlement thereto shall not be governed by any duty to mitigate damages by seeking further employment.

SECTION 10.    AMENDMENT, SUSPENSION OR TERMINATION.

This Plan may be amended, suspended or terminated at any time by the Board; provided, however, that, following a Change in Control Event and during the Change in Control Period relating to such Change in Control Event, the Board may not amend, suspend or terminate this Plan without the consent of all Employees then subject to the Plan.

SECTION 11.    GOVERNING LAW.

This Plan shall be governed by the laws of the United States to the extent applicable and otherwise by the laws of the District of Columbia, excluding the choice of law rules thereof.

SECTION 12.    SEVERABILITY.

If any part of any provision of this Plan shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of such provision or the remaining provisions of this Plan.

SECTION 13.    DISCLAIMER OF RIGHTS.

No provision in this Plan shall be construed to confer upon any individual the right to remain in the employ or service of the Company or any Affiliate, or to interfere in any way with any contractual or other right or authority of the Company either to increase or decrease the compensation or other payments to any individual at any time, or to terminate any employment or other relationship between any individual and the Company. The obligation of the Company to pay any benefits pursuant to this Plan shall be interpreted as a contractual obligation to pay only those amounts described herein, in the manner and under the conditions

8

prescribed herein. The Plan shall in no way be interpreted to require the Company to transfer any amounts to a third party trustee or otherwise hold any amounts in trust or escrow for payment to any participant or beneficiary under the terms of the Plan.

## SECTION 14.   CAPTIONS.

The use of captions in this Plan is for the convenience of reference only and shall not affect the meaning of any provision of this Plan.

## SECTION 15.   NUMBER AND GENDER.

With respect to words used in this Plan, the singular form shall include the plural form, the masculine gender shall include the feminine gender, etc., as the context requires.

## SECTION 16.   SECTION 409A.

It is the intention of the parties that payments or benefits payable under this Plan not be subject to the additional tax imposed pursuant to Section 409A of the Code. To the extent such potential payments or benefits could become subject to such Section, the parties shall cooperate to amend this Plan with the goal of giving the Employees the economic benefits described herein in a manner that does not result in such tax being imposed.

\* \* \* \* \*

This Plan was duly adopted and approved by the Board of Directors as of the 5th day of March, 2006.

/s/ Ann Marie Pulsch
Secretary of the Meeting

9

\\\DC - 62700/0106 - 2249348 v8

**Schedule A**
**Operating Committee and Pay Level Y or Higher**

If the Employee is a member of the Operating Committee or is at Pay Level Y or higher, the amount equal to the product (1) the number of complete and partial years of service with the Company (rounded to the nearest month) and (2) one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus, but in no event shall the number of years of service be less than 12 or greater than 24.

If the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount of the payments is reduced by one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus for each complete month that the termination occurs after the anniversary of the Change in Control Date. Notwithstanding the preceding sentence, if the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount shall not be less than the amount to which the Employee would be entitled under the Company's standard separation pay plan, if any, in effect at the time of the Employee's Date of Termination.

## Schedule B
## Pay Levels S through X

If the Employee is at Pay Level S through X, the product (1) the number of complete and partial years of service with the Company (rounded to the nearest month) and (2) one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus, but in no event shall the number of years of service be less than six or greater than 24.

If the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount of the payments is reduced by one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus for each complete month that the termination occurs after the anniversary of the Change in Control Date. Notwithstanding the preceding sentence, if the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount shall not be less than the amount to which the Employee would be entitled under the Company's standard separation pay plan, if any, in effect at the time of the Employee's Date of Termination.

## Schedule C
## Pay Levels below S

If the Employee is at a Pay Level below S, the product (1) the number of complete and partial years of service with the Company (rounded to the nearest month) and (2) one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus, but in no event shall the number of years of service be less than four or greater than 24.

If the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount of the payments is reduced by one-twelfth of the sum of (x) the Employee's Annual Base Salary and (y) the Annual Bonus for each complete month that the termination occurs after the anniversary of the Change in Control Date. Notwithstanding the preceding sentence, if the Employee's termination of employment occurs more than 12 months after the Change in Control Date, the amount shall not be less than the amount to which the Employee would be entitled under the Company's standard separation pay plan, if any, in effect at the time of the Employee's Date of Termination.

\\\DC - 62700/0106 - 2249348 v6

## SCR CIV FORM 1-A
### Notice and Acknowledgment for Service by Mail
## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| Stephen B. Kutzer |
|---|

*Plaintiff*

V.

Civil Action Number | 2006 CA 007467 B

| CarrAmerica Realty Corporation |
|---|

*Defendant*

## NOTICE

To:    Name | CT Corporation System

Address | 1015 15th Street, N.W.  Suite 1000

| Washington, D.C.  20005 |
|---|

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement.  If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form.   If you fail to do so, judgment by default may be taken against you or the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of  Summons, Complaint and Initial Order was mailed on
(insert date) | October 9, 2006

Signature _____

| October 9, 2006 |
|---|
Date of Signature

### Acknowledgment  of  Receipt  of  Summons,  Complaint  and  Initial  Order

I received a copy of the summons, complaint and initial order in the above captioned matter at

(address) | _____

Signature _____    Relationship to Defedant/Authority    Date of Signature
                                   To Receive Service

Form CV(6)-1590/Mar 97

**SCR  CIV  FORM  1-A**
Notice  and  Acknowledgment  for  Service  by  Mail
**SUPERIOR  COURT  OF  THE  DISTRICT  OF  COLUMBIA**
Civil  Division

| Stephen B. Kutzer |
*Plaintiff*

V.

| CarrAmerica Realty Corporation |
*Defendant*

Civil Action Number | 2006 CA 007467 B |

**NOTICE**

To:   Name | CT Corporation System |

Address | 1015 15th Street, N.W.  Suite 1000 |

| Washington, D.C.  20005 |

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form.  If you fail to do so, judgment by default may be taken against you or the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of  Summons, Complaint and Initial Order was mailed on (insert date) | October 9, 2006 |

Signature _____       | October 9, 2006 |
Date of Signature

**Acknowledgment  of  Receipt  of  Summons,  Complaint  and  Initial  Order**

I received a copy of the summons, complaint and initial order in the above captioned matter at

(address) | |

| Signature | Relationship to Defedant/Authority | Date of Signature |
To Receive Service

Form CV(6)-1590/Mar 97



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

STEPHEN KUTZER,
Vs.
CARRAMERICA REALTY CORP

C.A. No.    2006 CA 007467 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge RUSSELL F CANAN
Date:    October 4, 2006
Initial Conference: 9:30 am, Friday, January 05, 2007
Location:    Courtroom 518
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001

Caio.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


*STEPHEN KUTZER*
Plaintiff

v.                                         Civil Action No.     **06 1925**

**NOV - 9 2006**

*CARRAMERICA REALTY CORP.*
Defendant


    The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **KESSLER, J. GK** . All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

    Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

    Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By *Maureen Higgins*
Deputy Clerk

cc: *LYNNE BERNABEI*

929A
Rev. 7/02